IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01071-PAB-MJW

IRENE RODRIGUEZ,

    Plaintiff,

v.

CHRISTINE CHAVEZ, individually and as a Police Officer of the City and County of Denver,
JOEY GASCA, individually and as a Police Officer of the City and County of Denver,
KRISTY GARCIA, individually and as a Police Officer of the City and County of Denver,
DAMON BOWSER, individually and as a Police Officer of the City and County of Denver,
GERALD R. WHITMAN, as the former Chief of Police of the City and County of Denver,
CITY AND COUNTY OF DENVER, a municipal corporation,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on the Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) [Docket No. 95] filed by defendants Christine Chavez, Joey Gasca, Kristy Garcia, Damon Bowser, Gerald R. Whitman (collectively the "individual defendants") and the City and County of Denver ("defendant Denver").

## I. BACKGROUND[1]

On April 22, 2010, plaintiff Irene Rodriguez was returning to her residence at the Shady Nook Trailer Park in Denver, Colorado. Docket No. 1 at 3, ¶ 10. At approximately 2:00 p.m., Patricia Medina approached Ms. Rodriguez and asked to use

---

[1]The following facts are drawn from Ms. Rodriguez' complaint and are presumed to be true for purposes of resolving the instant motion.

her mobile telephone. *Id.* at 3, ¶ 11. Ms. Medina spoke only in English and had "blood all over [her]." *Id.* at 4, ¶ 13. Ms. Rodriguez gave Ms. Medina her mobile telephone. Ms. Medina left with the telephone, so Ms. Rodriguez followed her to retrieve it. *Id.* at 4, ¶ 14. Ms. Rodriguez was walking several feet behind Ms. Medina when Denver police officers arrived. *Id.* at 4, ¶ 15. Officer Joey Gasca and Officer Brock Ellerman took Ms. Medina into custody on suspicion of stabbing her husband. *Id.* at 4, ¶ 17. Officer Christine Chavez came towards Ms. Rodriguez and grabbed her arms, twisted her hands behind her back, and handcuffed her. *Id.* at 4, ¶ 18. Ms. Rodriguez attempted to explain in Spanish that she was attempting to retrieve her phone from Ms. Medina. *Id.* at 5, ¶¶ 19-20. Officer Chavez responded, "This is America you need to speak English," and pushed Ms. Rodriguez face down into a flowerbed. *Id.* Officer Chavez held Ms. Rodriguez' head down, at which point Officer Gasca and Officer Kristy Garcia "began assaulting and battering Plaintiff" and told her to "shut up." *Id.* at 5, ¶¶ 21-22. Officer Gasca got on top of Ms. Rodriguez and yanked her left arm while Officer Chavez was "violently yanking and pulling Plaintiff's legs." *Id.* at 5, ¶¶ 23-25. Ms. Rodriguez felt severe pain in her left arm and elbow. As a result of the actions of Officers Gasca, Garcia, and Chavez, Ms. Rodriguez' left arm was broken. *Id.*

Ms. Rodriguez claims that Officer Damon Bowser took a statement from a witness, but falsely transcribed the statement so as to be consistent with the other officers' version of events. *Id.* at 7, ¶ 27. Plaintiff claims that Officers Bowser, Chavez, Gasca, and Garcia (collectively the "Officers") conspired to cover up their unconstitutional actions and conspired to have Ms. Rodriguez charged and prosecuted

for interference and resisting arrest. *Id.* at 7, ¶ 28. Although Ms. Rodriguez was so charged, she was found not guilty at trial. *Id.* at 7, ¶ 29. Ms. Rodriguez alleges that defendants' actions in disregarding her constitutional rights were intentional, knowing, willful, wanton, malicious, and motivated by her race. *Id.* at 7, 8-9, ¶¶ 30, 35. She claims defendants deprived her of her constitutional rights "pursuant to the preexisting and ongoing deliberately indifferent policy[,] custom, practice, decision, training, and supervision" of defendant Denver and Chief of Police Gerald Whitman.[2] *Id.* at 7, ¶ 30. Ms. Rodriguez claims that defendant Denver and Chief Whitman had a practice and/or policy permitting officers to use excessive force and failed to train and supervise law enforcement personnel as to the use of force. *Id.* at 8, ¶¶ 31-32. Ms. Rodriguez alleges that, between 1997 and 2009, the Denver Police Department received 1,625 complaints concerning officers' use of force, 20 of which were sustained. *Id.* at 8, ¶ 33.

On April 20, 2012, Ms. Rodriguez filed her complaint. *Id.* at 1. Ms. Rodriguez asserted three claims for relief: (1) a 42 U.S.C. § 1983 claim against the Officers in their individual and official capacities for excessive force, false arrest, unlawful seizure, and malicious prosecution, *id.* at 9, 12; (2) a § 1983 and § 1985 claim against the individual defendants in their individual and official capacities and against defendant Denver for conspiracy to violate civil rights, *id.* at 12, 14; and (3) a claim pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), against Chief Whitman in his official capacity and against defendant Denver for deliberately indifferent policies, practices, and customs.

---

[2]Although he no longer serves as Chief of Police, Mr. Whitman will be referred to in this Order as "Chief Whitman" to reflect his position at the time of the alleged incident between Ms. Rodriguez and the Officers.

*Id.* at 14.  Pursuant to Fed. R. Civ. P. 12(c), defendants filed a motion to dismiss Ms. Rodriguez' claims against the individual defendants in their official capacities and the claims against defendant Denver.[3]  Docket No. 95.

## II. STANDARD OF REVIEW

The Court reviews a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) much as it would a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion.").  Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same."  *Id*.  "Judgment on the pleadings is appropriate only when 'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quoting *Park Univ.*, 442 F.3d at 1244).

Therefore, to survive defendants' motion, "plaintiff must allege enough factual matter, taken as true, to make [her] 'claim to relief . . . plausible on its face.'"  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*,

---

[3]After defendants filed the instant motion, Ms. Rodriguez dismissed with prejudice her claims against Chief Whitman in his individual capacity.  Docket No. 103.  Thus, to the extent defendants seek the dismissal of claims brought against Chief Whitman in his individual capacity, defendants' motion is moot.  *See* Docket No. 115 at 2.

550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

### III. ANALYSIS

#### A. Claims Against Officers Gasca, Chavez, Garcia, and Bowser in Their Official Capacities

Defendants argue that the Officers cannot be held liable in their official capacities because "they are rank and file police officers." Docket No. 95 at 10. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted).[4] "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."

---

[4] "[T]he § 1983 standards for municipal liability are the same as the standards for municipal liability in the § 1985 context." *Sims v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 120 F. Supp. 2d 938, 946 n.4 (D. Kan. 2000).

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).  Final policymakers are those decisionmakers who "possess[] final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  The fact that an official has discretion in exercising his duties "does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Id.* at 481-82.[5]  In deciding whether an official is a final policymaker, the inquiry is focused only on "delegations of *legal power.* "  *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F.3d 1175, 1189 (10th Cir. 2010) (emphasis in original).

The Officers are alleged to be police officers employed by defendant Denver.  *See, e.g.*, Docket No. 1 at 2, ¶ 4 ("Defendant Christine Chavez was . . . acting under color of state law in her capacity as a police officer employed by the City and County of Denver.").  However, Ms. Rodriguez' complaint contains no facts upon which to conclude that the Officers are final policymakers and does not address whether the Officers were at any point delegated the necessary legal power.  *See Brammer-Hoelter*, 602 F.3d at 1189.  In her response brief, Ms. Rodriguez claims that Officer Chavez "was a Corporal and therefore a supervisor."  Docket No. 104 at 8.  However, even assuming the assertion is taken as true, the fact that Officer Chavez supervised other officers does not mean that defendant Denver is liable, absent final policymaking

---

[5]The Tenth Circuit has identified three elements to guide the determination of whether a municipal employee is a final policymaker: (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final – i.e., are such decisions subject to any meaningful review; and (3) whether the policy decisions purportedly made by the official are within the realm of the official's grant of authority.  *See Randle v. City of Aurora,* 69 F.3d 441, 448 (10th Cir. 1995)

authority, for an unconstitutional exercise of that discretion. *See Randle*, 69 F.3d at 448 (citing *Pembaur*, 475 U.S. at 483 n.12).

Ms. Rodriguez also argues that, because the Officers admitted to "acting under color of law," the Officers were "acting in their official capacity." Docket No. 104 at 9. Ms. Rodriguez' argument is insufficient. Acting "under color of law" is a requirement for § 1983 liability, but "[m]ore is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when . . . the entity's 'policy or custom' . . . played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Only the actions of final policymakers may subject a municipality to § 1983 liability. *See Praprotnik*, 485 U.S. at 123. Because Ms. Rodriguez fails to allege facts upon which to conclude that any of the Officers had final policymaking authority, Ms. Rodriguez has failed to state a claim under § 1983 and § 1985 against Officers Gasca, Chavez, Garcia, and Bowser in their official capacities.[6]

### B. Claims Against Defendant Denver and Chief Whitman in His Official Capacity

Defendants argue Ms. Rodriguez' allegations in support of her *Monell* claim

---

[6]Ms. Rodriguez cites *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013), in support of her argument that employees acting in their official capacity can bind a municipality. However, the official capacity claim at issue in *Meade* was against a sheriff "responsible for establishing the county's policy regarding the use of force." *Id.* at 1530. Ms. Rodriguez' allegations do not indicate that the Officers had any such responsibility. Thus, *Meade* does not lend support to Ms. Rodriguez' argument. Ms. Rodriguez also cites to Colo. Rev. Stat. § 29-5-111 for the proposition that Colorado police officers acting in their official capacity are subject to liability. Docket No. 104 at 10. Section 29-5-111 concerns the duty of a city or county to indemnify police officers, but does not create an alternative path to holding a municipality liable for the actions of its employees.

7

against defendant Denver and Chief Whitman are conclusory and therefore insufficient to state a claim. Docket No. 95 at 12. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[7] *Monell*, 436 U.S. at 694. Municipalities cannot be held liable "under a theory of *respondeat superior*." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406-07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will have simply shown that the *employee* acted culpably." (emphasis in original)).

Ms. Rodriguez advances two primary theories of municipal liability: (1) a failure to discipline, supervise, and train officers concerning the use of force and (2) the existence of customs, policies, and practices that encouraged the use of excessive force on Ms. Rodriguez. Docket No. 104 at 13, 15. She also alleges that Chief Whitman in his official capacity and defendant Denver are liable for conspiracy to violate civil rights. Docket No. 1 at 14. To establish municipal liability, a plaintiff must show "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Okla.*

---

[7]Official capacity suits are, "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, for the purposes of resolving this motion, the Court assumes that Chief Whitman is a final policy maker, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), and will consider collectively the allegations against Chief Whitman in his official capacity and the allegations against defendant Denver. *See, e.g., Whitewater v. Goss*, 192 F. App'x 794, 796 (10th Cir. 2006) (unpublished) (""Plaintiffs' suit against Sheriff Goss in her official capacity is equivalent to a suit against Cherokee County . . . itself.").

*City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation marks omitted). An "official policy or custom" may be shown by the existence of "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[8] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Causation is established if the plaintiff shows that the challenged policy or practice is "closely related to the violation of the plaintiff's federally protected right." *Id.* "This requirement is satisfied if the plaintiff shows that 'the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Brown*, 520 U.S. at 404). Thus, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.

### 1. Failure to Train and/or Supervise

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).[9] "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or

---

[8] Ms. Rodriguez does not allege the existence of a formal written policy or that Chief Whitman, as a final policymaker, directly authorized the Officers' actions in this case. *See Brown*, 520 U.S. at 405.

[9] Failure to supervise and failure to train are treated the same in the Tenth Circuit. *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).

9

deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "[C]ontinued adherence to an approach that [the decision makers] know or should know has failed to prevent tortious conduct by employees may establish . . . conscious disregard." *Brown*, 520 U.S. at 407; *see also Rowe v. City of Marlow*, 1997 WL 353001, at *6 (10th Cir. June 26, 1997) (unpublished) ("municipal liability for failure to train or supervise requires a finding that the municipality's deliberate indifference 'led an employee to violate a plaintiff's rights' or 'failed to prevent tortious conduct by employees.'" (quoting *Brown*, 520 U.S. at 407)).

Ms. Rodriguez' allegation that defendant Denver and Chief Whitman acted with "deliberate indifference" in failing to supervise and train officers on the constitutional limitations on the use of force, Docket No. 1 at 16, ¶ 61, is conclusory and "do[es] not suffice." *Iqbal*, 556 U.S. at 678. Ms. Rodriguez alleges the existence of a "widespread custom, habit, practice and/or policy of . . . fail[ing] to supervise and to train deputies in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significant risk of injury to the public." Docket No. 1 at 8, ¶ 31. However, this allegation is unsupported by specific facts. *See Harris*, 489 U.S. at 391 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Ms. Rodriguez complaint also states:

33. Over a 12 year period, from 1997 through December, 2009 the Denver Police Department (DPD) has received 1,625 complaints involving 2,755 police officers of [sic] use of excessive force. Of the 1,625 complaints of use of excessive force involving 2,755 police offers[,] a total of 20 complaints

> were sustained for a sustained complaint rate of 1.23%, statistically significantly lower than the national average.
>
> 34.   Between 2004 through December 19, 2007 Defendants Gasca (5), Garcia (3) and Bowser (3) had numerous unnecessary force complaints lodged against them.  None of the unnecessary force complaints were sustained.

Docket No. 1 at 8, ¶¶ 33-34.[10]  Despite the fact that these statistics could be interpreted favorably to the defendants, Ms. Rodriguez appears to argue that the rate of sustained complaints shows a failure to supervise manifested by an unwillingness to discipline officers for incidents of excessive use of force.  Docket No. 104 at 13-14.  Implicit in Ms. Rodriguez' argument is the contention that at least some of the remaining 1,605 complaints merited discipline, but that defendant Denver and Chief Whitman failed to act.  However, Ms. Rodriguez fails to allege a single instance where Chief Whitman or defendant Denver disregarded or ignored a meritorious complaint.  Although Ms. Rodriguez alleges generally that defendant Denver and Chief Whitman failed to discipline officers for "numerous complaints," Ms. Rodriguez fails to provide any context or supporting facts to upon which to conclude that the complaints lodged against Officers Gasca, Garcia, and Bowser were meritorious and warranted discipline of the officer involved.[11]  Thus, the total number of complaints over a twelve year period or the

---

[10] It is not entirely clear whether Ms. Rodriguez argues that use of force complaint statistics are relevant to a failure to supervise or whether the use of force complaint statistics are relevant to the existence of an unconstitutional custom or policy.  However, for the reasons stated below, Ms. Rodriguez' claims fail under either theory.

[11] Ms. Rodriguez cites *Graber v. City & Cnty. of Denver*, No. 09-cv-01029-JLK-MJW, 2011 WL 3157038, at *3 (D. Colo. July 27, 2011), for the proposition that statistical evidence can be used to establish the existence of an unconstitutional custom.  Docket No. 104 at 14.  However, *Graber* discussed statistical evidence in the

11

percentage of sustained complaints does not indicate that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Harris*, 489 U.S. at 390.

Even if Ms. Rodriguez could establish the deliberate indifference element, her causation allegations are insufficient.  The complaint states that Chief Whitman and defendant Denver failed to supervise or train its officers concerning the use of force "resulting in Defendants Chavez, Gasca, Garcia and Bowser engaging in unlawful assault, battery, abuse of authority and denial of civil rights of the Plaintiff."  Docket No. 1 at 16, ¶ 61; *see also id.* at 17, ¶¶ 65-66.  These allegations are conclusory and insufficient.  *See Harris*, 489 U.S. at 391 (holding that the relevant causation requires a determination of whether plaintiff's injury would have been avoided had the officer "been trained under a program that was not deficient in the identified respect").  Thus, Ms. Rodriguez has failed to allege sufficient facts upon which to conclude that defendant Denver was the moving force behind her injuries.

### 2. *Custom, Policy, or Practice*

To hold a municipality liable for a custom, policy, or practice, a plaintiff must allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's] employees;
> (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and

---

discovery context.  Here, even when considering Ms. Rodriguez' excessive force complaint statistics, her claims fail.

> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993). A single incident is generally insufficient to show municipal liability, unless the plaintiff can show that "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

The complaint alleges that Chief Whitman and defendant Denver were deliberately indifferent in:

> a.  failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of excessive force;
>
> b.  failing to discipline officers engaged in the unconstitutional uses of excessive force;
>
> c.  tolerating the use of excessive force;
>
> d.  failing to properly or neutrally investigate citizen complaints of excessive force;
>
> e.  tolerating, encouraging, and permitting collusive statements by involved officers in the use of excessive force and permitting officers to lie about the use of excessive force;
>
> f.  failing to discipline officers who lie, depart from the truth and file false reports.

Docket No. 1 at 15-16, ¶ 59. Ms. Rodriguez' allegations fall short for multiple reasons. First, as stated above, Ms. Rodriguez fails to sufficiently allege a failure to train and/or supervise. Second, as stated above, the excessive force complaint statistics Ms. Rodriguez relies upon lack supporting facts. The complaint states that Chief Whitman

and defendant Denver "knew of the . . . numerous complaints for use of excessive force." Docket No. 1 at 17, ¶ 64. However, Ms. Rodriguez does not argue that the total number of complaints was such that defendant Denver or Chief Whitman knew or should have known that a constitutional violation was "substantially certain to result." *See Barney*, 143 F.3d at 1307. Ms. Rodriguez fails to provide any supporting facts – such as how the frequency of complaints compares to police departments of similar size – that may otherwise support the conclusion that defendant Denver or Chief Whitman had knowledge of, but disregarded, the substantial risk of a constitutional violation. Alleging the existence of "deliberate indifference" is a mere recitation of the elements and therefore need not be accepted as true. Moreover, Ms. Rodriguez makes no attempt to highlight any other facts supporting the deliberate indifference element and the Court finds no such allegations contained within the complaint.

Ms. Rodriguez argues that her claims find factual support in *Ortega v. City & Cnty. of Denver*, 944 F. Supp. 2d 1033 (D. Colo. 2013). In *Ortega*, the plaintiffs survived summary judgment on an excessive force claim against defendant Denver by showing that defendant Denver failed to adequately investigate complaints against officers for excessive use of force and failed to discipline officers for use of excessive force. *Id.* at 1040. Plaintiffs relied on testimony by Denver's former independent police monitor to support many of their contentions. *Id.* at 1039. Here, plaintiff argues that, because the events in *Ortega* took place during the same time period as the events giving rise to the instant case, the *Ortega* order factually supports her allegations. Docket No. 104 at 17. However, the evidence contained within the *Ortega* decision is

outside the pleadings. Although "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment," *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), the Court cannot judicially notice another court's findings of fact for their truth. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (holding that facts adjudicated in a prior case do not satisfy requirements of Fed. R. Evid. 201(b)). The Court is therefore unable to consider such material without converting defendants' motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d) (if a motion to dismiss contains matters outside the pleadings "the motion must be treated as one for summary judgment under Rule 56.").

The Court will not convert the instant motion into one for summary judgment. Even if Ms. Rodriguez could establish the existence of a municipal custom, she fails to meet the causation element. The complaint states that defendant Denver's "customs, policies and practices cause person[s] to suffer constitutional deprivations at the hands of Denver police officers," that the policies, procedures, and customs maintained by Chief Whitman were "moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights," that the concealment of the officers' civil rights violations "caus[ed] and encourag[ed]" the individual defendants to harm plaintiff. Docket No. 1 at 8, ¶ 32, at 15, ¶ 57, and at 17, ¶ 63. Ms. Rodriguez further alleges that she was denied her civil rights "[a]s a direct result of Defendant City and County of Denver's unlawful conduct" and her injuries were a "direct and proximate result of the denial of Plaintiff's civil rights by the City and County of Denver." *Id.* at 17, ¶¶ 65, 66.

These allegations are no more than a recitation of the elements.  *See Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) ("the plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action" (internal citation omitted)).  Ms. Rodriguez alleges no additional facts upon which to infer a direct causal link between defendant Denver's customs or policies and the officers' alleged violation of her constitutional rights.  *See Brown*, 520 U.S. at 404.  Thus, her claim fails.

### 3. Conspiracy Claims

Ms. Rodriguez brings a conspiracy claim against defendant Denver and Chief Whitman in his official capacity.  Docket No. 1 at 14.  The complaint alleges that the Officers created a series of formal and informal policies and practices of denying Ms. Rodriguez and other Hispanics and Latinos their rights, policies which were adopted by defendant Denver "through its official and unofficial decision making channels."  *Id.* at 13, ¶ 50.  This claim fails for two reasons.  First, as noted above, the Officers are not final policymakers; thus, the claim fails to allege how the policies created by the Officers were adopted by defendant Denver.  Second, Ms. Rodriguez fails to allege a causal connection between the alleged policy and her injuries.  Allegations that she was injured "as a result" of an alleged policy does not meet the rigorous standards of culpability required to hold a municipality liable for the actions of its employees.  *See Brown*, 520 U.S. at 405.

Ms. Rodriguez has failed to state a claim against defendant Denver or Chief Whitman in his official capacity.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) [Docket No. 95] is **GRANTED**.  It is further

**ORDERED** that Gerald R. Whitman and the City and County of Denver are **DISMISSED** from the case.  It is further

**ORDERED** that the claims against Christine Chavez, Joey Gasca, Kristy Garcia, and Damon Bowser in their official capacities are **DISMISSED**.

DATED September 16, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge