IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01071-PAB-MJW

IRENE RODRIGUEZ,

      Plaintiff,

v.

CHRISTINE CHAVEZ, individually,
JOEY GASCA, individually,
KRISTY GARCIA, individually,
DAMON BOWSER, individually,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on the Motion for Partial Summary Judgment [Docket No. 156] filed by defendants Christine Chavez, Joey Gasca, Kristy Garcia, and Damon Bowser.

## I. BACKGROUND[1]

      This case arises out of an April 22, 2010 encounter between plaintiff Irene Rodriguez and officers from the Denver Police Department.  Plaintiff was 41 years old on the date in question.  She speaks Spanish and does not speak or understand English.  Docket No. 172 at 13, ¶ 4.  Defendants are officers with the Denver Police Department ("DPD").  Docket No. 156 at 3, ¶¶ 1-4.[2]

_____

[1]The following facts are undisputed unless otherwise indicated.

[2]In accord with the parties' briefs, the Court will individually refer to each defendant by his or her rank as of April 22, 2010, rather than by defendants' current ranks.

On April 22, 2010, at approximately 2:00 p.m., plaintiff heard a knock on the door at her home in a trailer park off Morrison Road in Denver, Colorado.  Docket No. 172-2 at 2, ¶ 5.  Plaintiff opened the door to find a woman, later identified as Patricia Medina, whose clothes and hands were covered in blood.  *Id.*  Ms. Medina indicated that she wanted to borrow a cell phone.  *Id.* at 2, ¶¶ 5-6.  Plaintiff handed Ms. Medina a cell phone and followed her outside.  *Id.* at 2, ¶¶ 6-7.  While Ms. Medina was making a phone call, plaintiff noticed a man, later identified as Angel Martinez, with blood on his clothes holding his stomach.  *Id.* at 2, ¶ 7.

Meanwhile, DPD dispatch received a call from a Spanish speaking female, who reported that a man had been stabbed.  Docket No. 172-5.[3]  Just after 2:00 p.m., dispatch asked for available units to respond to a stabbing at a trailer park on Morrison Road in Denver, Colorado.  Docket No. 156-3 at 5, p. 46:6-9.  Dispatch initially told officers over the radio that "Irene Rodriguez is calling this in.  Spanish speaking female yelling that a male is injured, saying that someone stabbed this male.  She sounds as though she might be intoxicated."  Docket No. 156-6.  Dispatch later reported that the male victim stated that the female caller stabbed him, leading dispatch to initially report that the suspect was Ms. Rodriguez.  *Id.*  Dispatch then relayed to officers that the suspect's name was Patricia, a five foot two, 25 year old Native American female who may still be armed with a steak knife.  *Id.*  At 2:06 p.m. dispatch reported that the suspect was wearing blue pants.  *See also* Docket No. 156 at 3-4, ¶ 6.  Corporal Chavez, Officer Gasca, and Officer Garcia responded to the call.  Docket No. 156 at 3,

---

[3]Although the parties do not explicitly indicate who originated the call described in Docket No. 172-5, it appears to have been originated by Ms. Medina.

¶ 5; Docket No. 156-2 at 7, p.108:7-9.  Officer Gasca testified that, before getting out of their patrol car, he and Corporal Chavez discussed observing two females who fit the description of the suspect.  Docket No. 156-2 at 8, p. 130:19-24.  Officer Garcia arrived in a second patrol car with Officer Brock Ellerman and testified that she did not discuss the call with Corporal Chavez and Officer Gasca prior to making contact with plaintiff, Ms. Medina, and Mr. Martinez.  Docket No. 156-3 at 7, p. 91:3-22.

Corporal Chavez and Officer Gasca both stated that, upon arriving at the scene, "I observed one man and two women who looked Native American and who were wearing blue pants."  Docket No. 156-7 at 1, ¶ 5; Docket No. 156-8 at 1, ¶ 5.  Officer Garcia testified that she observed two females who looked Hispanic or Native American, both of whom were wearing blue pants.  Docket No. 156-3 at 6-7, pp. 88:21-89:2.  Plaintiff asserts that she is not, in fact, Native American, Docket No. 172 at 5-6, ¶ 8, and that plaintiff and Ms. Medina do not look similar.  *See* Docket No. 172-3; Docket No. 172-4.

Officer Gasca approached one of the women, later identified as Ms. Medina, and ordered her to show her hands.  Docket No. 156 at 4, ¶ 10.  Ms. Medina complied and Officer Gasca began taking her into custody.  *Id.*  Corporal Chavez approached the other woman, later identified as plaintiff, and, in English, commanded plaintiff to show her hands.  Docket No. 156 at 4, ¶ 11; *see also* Docket No. 156-7 at 2, ¶ 8 ("I asked her to show me her hands.").  There is evidence, which plaintiff does not dispute, that Corporal Chavez issued this command multiple times.  *See* Docket No. 156-1 at 13, p.292:4-5 ("she wasn't following my requests to show me her hands"); Docket No. 172-7 at 1 ("Cpl Chavez ordered her 3 to 4 times to show us her hands").  Corporal Chavez

states that plaintiff did not comply with her commands.  Docket No. 156-7 at 2, ¶ 8.

Plaintiff attempts to create a factual dispute as to whether she complied with Corporal

Chavez' commands to show her hands.  First, plaintiff asserts that her hands were

already fully visible because, when Corporal Chavez came up to her, plaintiff's hands

were at her side.  Docket No. 172 at 7, ¶ 12 (citing Docket No. 172-1 at 135, p. 135:3-

9).[4]  Second, plaintiff asserts that she did not follow Corporal Chavez' command

because she did not understand English.  Docket No. 172 at 7, ¶ 12.  However, plaintiff

does not provide any evidence suggesting that plaintiff physically complied or verbally

responded to Corporal Chavez' commands.

The parties dispute what happened next.  Plaintiff asserts that Corporal Chavez

came towards her, forcefully handcuffed her, and threw her face first into a flower bed.

Docket No. 172-2 at 3, ¶¶ 15-18.  Plaintiff states that, after she was handcuffed, she

asked if anyone spoke Spanish, at which point which Corporal Chavez responded

"We're in America shut-up!"  *Id.* at 3, ¶ 17.  Corporal Chavez held plaintiff's head in the

mud, at which point Officer Garcia jumped on plaintiff, pulling her arms and sitting on

her legs.  *Id.* at 3, ¶ 20, 23.  Officer Gasca then came to the flower bed and pulled on

plaintiff's arms.  *Id.* at 24.  Plaintiff states that defendants then kneed her in the back,

placed pressure on her ankles, and eventually yanked her up by her arms.  *Id.* at 3-4, ¶

25-26.  Plaintiff asserts that at no point did she resist defendants' efforts to get her into

custody.  Plaintiff states that she suffered permanent injuries as a result of this

---

[4]Although, at her deposition, plaintiff testified that her arms were crossed when
Corporal Chavez approached her, Docket No. 156-9 at 3, pp. 31:21-32:18, the Court
views the evidence in the light most favorable to plaintiff.

encounter.

Corporal Chavez states that, after plaintiff failed to comply with her commands, she approached plaintiff and took her down to the ground in the flower bed. Docket No. 156-7 at 2, ¶ 8. Officer Gasca states that, while he was taking Ms. Medina into custody, he heard Corporal Chavez struggling with plaintiff and went to the flower bed to assist Corporal Chavez. Docket No. 156-8 at 2, ¶ 6; Docket No. 156-2 at 11, p. 153:14-15 ("[W]e put [Ms. Medina] in handcuffs. And that's when I heard the disturbance behind me."). Officer Gasca testified that plaintiff was not handcuffed when he arrived at the flower bed and that he and Corporal Chavez had difficulty handcuffing plaintiff, who was able to slip out of one of her cuffs. Docket No. 156-2 at 13, pp. 215:6-216:21. Officer Garcia's statement indicates that plaintiff was pulling her arms underneath her body and kicking and that Officer Garcia assisted Corporal Chavez and Officer Gasca by securing plaintiff's legs. Docket No. 172-7 at 1. After plaintiff was handcuffed, she attempted to flee on foot, but was restrained by Corporal Chavez. *Id.*

The parties do not dispute that, once plaintiff was secured, she was examined by paramedics and then placed into the back of a police car. Docket No. 156-9 at 8, p. 61:3-62:21. Mr. Martinez spoke with Officer Garcia and identified Ms. Medina as the perpetrator of the stabbing. Docket No. 172-7 at 2. Ms. Medina was then placed in the back of a police car and transported to District Four for processing. Docket No. 172-7.

Corporal Chavez and Officer Gasca state that they did not learn that Ms. Medina was the perpetrator of the stabbing until after plaintiff was in custody. Docket No. 156-7 at 2, ¶ 9; Docket No. 156-8 at 2, ¶ 8. Plaintiff asserts that a dispute of fact exists as to whether officers arriving on the scene were immediately able to identify Ms. Medina as

5

the perpetrator of the stabbing.  Docket No. 172 at 6, ¶ 9.  However, the evidence upon which plaintiff relies does not create a dispute of fact as to Corporal Chavez' and Officer Gasca's statements on this issue.  Although plaintiff argues that DPD dispatch identified the suspect as having the first name "Patricia," plaintiff does not point to any evidence suggesting that officers were able to identify which woman had the first name Patricia before plaintiff was restrained.  Plaintiff contends that Officer Garcia's written statements suggest that Officers Gasca, Garcia, and Ellerman immediately identified Ms. Medina as "the suspect in the stabbing," but the statements upon which plaintiff relies indicate that officers initially believed there to be two suspects, Docket No. 172-7 at 1, and that Officer Garcia spoke with Mr. Martinez after Ms. Medina was already in custody.

After plaintiff was taken into custody, Corporal Chavez contacted her supervisor, Sergeant Tim Towne, and advised him of the situation.  Docket No. 156-1 at 14, pp. 298:10-299:3.  Sergeant Towne instructed Corporal Chavez to charge plaintiff with interference and resistance.  *Id.*  It is unclear when, if at all, Corporal Chavez communicated Sergeant Towne's instructions to Officer Gasca.  Nevertheless, at some point after she was placed in the back of a police car, officers transported plaintiff to jail. Docket No. 172 at 14, ¶ 16.  According to plaintiff, she was released from jail after midnight on April 23, 2010 after posting a $500 bond.  Docket No. 156 at 7, ¶ 30; Docket No. 172-2 at 5, ¶ 38.

At some point after plaintiff was taken into custody, Officer Gasca completed and signed a complaint, which charged plaintiff with interference in violation of Denver Municipal Code § 38-31 and resistance in violation of Denver Municipal Code § 38-32.

6

Docket No. 156-10 at 1; Docket No. 156 at 5, ¶ 14.  As probable cause for the charges, the complaint states, in part, that "officers ordered [Ms. Rodriguez] to show them her hands but she refused.  Officer went to control [Ms. Rodriguez] but she forcabl[ly] pulled away from officer and officer placed [Ms. Rodriguez] into a flower bed filled w/ dirt."  *See* Docket No. 156-10.  Officer Gasca states that he received this information from Corporal Chavez because, while he was attempting to secure Ms. Medina, he did not personally witness Corporal Chavez ordering plaintiff to show her hands and plaintiff's refusal to comply.  Docket No. 156-8 at 2, ¶ 9.  Plaintiff disputes this, asserting that, because Ms. Rodriguez and Ms. Medina were within five feet of one another, Officer Gasca would have been able to view Corporal Chavez' encounter with plaintiff.  Docket No. 172 at 8.  However, plaintiff does not provide any evidence disputing Officer Gasca's statement that he did not witness Corporal Chavez' initial encounter with plaintiff and that he completed the charging document based, in part, upon information provided by Corporal Chavez.

After plaintiff was taken into custody, Sergeant Towne and Officer Bowser arrived at the scene to investigate the responding officers' use of force.  Docket No. 156 at 5, ¶ 18; Docket No. 156-12 at 1, ¶ 5.  Sergeant Towne attempted to locate witnesses to the responding officers' use of force and made contact with Clyde MacArthur, who, according to defendants, stated that he had witnessed plaintiff resisting arrest.  Docket No. 156 at 6, ¶¶ 19-20; Docket No. 156-11 at 1, ¶¶ 4-5.[5]  Without revealing the details

---

[5]Although plaintiff contends that a dispute exists as to whether Sergeant Towne actually canvassed the trailer park for witnesses and actually spoke to Mr. MacArthur, the evidence upon which plaintiff relies does not create a dispute of fact.  *See* Docket No. 172 at 8-9, ¶¶ 19-20.  Moreover, even if a dispute exists, plaintiff does not establish

of his conversation with Mr. MacArthur, Sergeant Towne directed Officer Bowser to take a statement from Mr. MacArthur.  Docket No. 156 at 6, ¶¶ 23-24.  Although the parties dispute the reason why, Mr. MacArthur indicated that he could not personally write out a statement; thus, Officer Bowser wrote down his questions and Mr. MacArthur's answers, read the statement back to Mr. MacArthur, and Mr. MacArthur signed the statement.  Docket No. 156-12 at 2, ¶ 7.  Officer Bowser gave Mr. MacArthur's statement to Sergeant Towne, but neither Officer Bowser nor Sergeant Towne provided the statement to Corporal Chavez or Officers Gasca and Garcia.  Docket No. 156 at 6-7, ¶¶ 26-28.  Plaintiff asserts that Mr. MacArthur's statement became part of the "official records" such that officers with access to the investigation of plaintiff's criminal case could view the statement, but provides no evidence that any of the defendants actually viewed the statement.  Docket No. 172 at 9-10, ¶ 27.  Officer Bowser did not speak with any other defendants at the scene and states that he did not tell the other defendants that he had taken a statement from Mr. MacArthur or otherwise discuss the statement with them, Docket No. 156-12 at 2, ¶ 8, which plaintiff cites no evidence to dispute.  See Docket No. 172 at 10, ¶ 28 (citing Docket No. 156-4 at 7, pp. 37:2-38:3).  Officer Gasca states that, at the time he charged plaintiff, he did not know that any statement had been taken from Mr. MacArthur and did not learn about Mr. MacArthur's statement until after this case was filed.  Docket No. 156-8 at 2-3, ¶¶ 10-11.

Plaintiff's criminal case was tried to the court in Denver County Court on September 29, 2010 and October 22, 2010.  Docket No. 156 at 7, ¶ 32.  Corporal

---

that such a dispute is material.

Chavez testified at trial pursuant to a subpoena, but did not speak with Frank Ingham, the City Attorney who prosecuted plaintiff's case, prior to trial.  Docket No. 156 at 8, ¶ 35.  Officers Garcia and Gasca did not testify at plaintiff's criminal trial and plaintiff provides no evidence that either officer spoke Mr. Ingham prior to trial.  Docket No. 156 at 7-8, ¶¶ 33-34; Docket No. 172 at 10-11, ¶¶ 33-34.  After Mr. MacArthur testified at trial that Officer Bowser's statement of his interview of Mr. MacArthur was mostly inaccurate, Mr. Ingham subpoenaed Officer Bowser to testify as a rebuttal witness.  Docket No. 156 at 8, ¶ 37.  Although Officer Bowser was provided with a copy of the statement he took from Mr. MacArthur before taking the stand, he did not recall speaking with Mr. Ingham.  Docket No. 156-4 at 10, p. 57:7-21; *id.* at 10, p. 60:4-9.  The court acquitted plaintiff of both charges, finding that, because plaintiff did not understand English, she lacked the requisite mental state to be found guilty.  Docket No. 156-13 at 5, p. 191:2-17.  The court stated that its finding "is not based in any way upon Mr. MacArthur's testimony."  *Id.* at 5, p. 191:18-19.

On April 20, 2012, plaintiff filed this case against defendants and former Chief of Police Gerald Whitman in their individual and official capacities as well as against the City and County of Denver.  Docket No. 1 at 1.  Count one[6] of plaintiff's complaint asserts claims under 42 U.S.C. § 1983 for excessive force, false arrest, unlawful seizure, and malicious prosecution in violation of the Fourth and Fourteenth Amendments.  *Id.* at 9.  Count two of plaintiff's complaint asserts claims under § 1983

---

[6]Because plaintiff's First Claim for Relief sets forth multiple theories of liability, the Court refers to plaintiff's claims for relief as counts and each theory of liability asserted within each count as a claim.

and § 1985 for conspiracy to violate civil rights.  *Id.* at 12.  Count three of plaintiff's complaint asserts a *Monell* claim.  *Id.* at 14.  On December 20, 2013, the parties stipulated to the dismissal of all claims against former Chief Whitman in his individual capacity.  Docket No. 103.  On September 16, 2014, the Court granted defendants' partial motion to dismiss [Docket No. 95], and dismissed plaintiff's claims against the City and Count of Denver and former Chief Whitman, Corporal Chavez, and Officers Gasca, Garcia, and Bowser in their official capacities.  Docket No. 145 at 17.

On November 3, 2014, the remaining defendants filed the present motion, moving for entry of summary judgment as to multiple claims within count one and as to all claims within count two.  Docket No. 156.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III. ANALYSIS

Section 1983 of Title 42 creates a private right of action against state and local government officials who deprive individuals of their federal constitutional rights.  It states that "[e]very person who, under color of any statute, ordinance, regulation,

custom, or usage . . . subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable" to the

injured party in law or equity.  42 U.S.C. § 1983.

### A.  Fourth Amendment Claims[7]

The Fourth Amendment provides that the "right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures . . . shall not be violated."  U.S. Const. amend. IV.  A "seizure" for the purposes

of the Fourth Amendment occurs when a government actor terminates one's freedom of

movement through means intentionally applied.  *See Brower v. County of Inyo*, 489

U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Defendants move for summary judgment as to plaintiff's Fourth Amendment

claims against Officer Bowser for excessive force, false arrest, and unlawful seizure.

Docket No. 156 at 9-10.  Plaintiff agrees to the dismissal of such claims.  Docket No.

172 at 18.  Thus, defendants' motion for summary judgment will be granted as to

plaintiff's Fourth Amendment claims against Officer Bowser for excessive force, false

arrest, and unlawful seizure.  Defendants additionally move for summary judgment as to

plaintiff's false arrest claims against Chavez, Gasca, and Garcia and as to plaintiff's

---

[7]Although the Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment, *see United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 644 (1961)), for ease of reference, the Court refers to plaintiff's claims for violation of the Fourth Amendment's prohibitions on unlawful seizure as Fourth Amendment claims and plaintiff's claims for violation of the due process clause of the Fourteenth Amendment as Fourteenth Amendment claims.

malicious prosecution claim against all defendants.

### 1. False Arrest

"[W]hen a warrantless arrest is the subject of a § 1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), regardless of "whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "Central to this analysis is determining which crime, or crimes, defendants could objectively and reasonably have believed that [plaintiff] committed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). Within the probable cause analysis, courts are to consider whether the totality of the facts and circumstances within the officers' knowledge – and of which they have reasonably trustworthy information – is sufficient in itself to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Buck*, 549 F.3d at 1281; *Fogarty*, 523 F.3d at 1156. This exercise is an objective one; the officer's subjective beliefs are not considered. *Fogarty*, 523 F.3d at 1156.

Generally, "it is a jury question in a civil rights suit whether an officer had probable cause to arrest." *Buck*, 549 F.3d at 1281; *see also Bruner v. Baker*, 506 F.3d

1021, 1028 (10th Cir. 2007) ("where there is a question of fact or room for a difference of opinion about the existence of probable cause, it is a proper question for a jury" (quotations omitted).  However, the existence of probable cause may still be decided as a matter of law where there is only one reasonable determination regarding the issue. *See, e.g.*, *Bruner*, 506 F.3d at 1028; *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009).

Because "probable cause is measured at the moment the arrest occurs," the Court turns to the question of when plaintiff was arrested.  *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007).  "An investigative detention evolves into an arrest when the scope of police conduct is no longer reasonably related to the circumstances initially justifying the seizure."  *Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009) (quotations omitted).  "Forceful methods may be used during an investigative detention short of arrest only when such methods are necessary for officer protection. The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest."  *Id.* (citation omitted).  However, the permissible scope of an investigative detention "cannot be determined by reference to a bright-line rule."  *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002).

Both parties suggest that defendants' actions towards plaintiff initially constituted an investigative detention.  *See* Docket No. 173 at 7; Docket No. 172 at 17.  However, plaintiff contends that there is a dispute of fact as to when defendants' conduct constituted an arrest.  Docket No. 172 at 18-19.  Defendants do not squarely address this issue, but, by their arguments on the issue of probable cause, appear to suggest

14

that plaintiff's arrest was not effectuated until Officer Gasca completed the charging document.  *See* Docket No. 156 at 11.  Based upon the undisputed facts, the earliest point at which plaintiff's detention could have evolved into an arrest is when Corporal Chavez handcuffed plaintiff and took plaintiff to the ground following plaintiff's failure to respond to Corporal Chavez' commands to show her hands.[8]  *See Manzanares*, 575 F.3d at 1148.  For the reasons discussed below, any remaining factual dispute as to when plaintiff's detention may have evolved into an arrest does not constitute a genuine issue for trial.

Defendants argue that probable cause existed to arrest plaintiff for the crimes of interference and resisting police authority.[9]  Docket No. 156 at 11.  However, neither party analyzes the elements of interference and resisting authority.  Denver Municipal Code § 38-31(c) defines the crime of interference with police authority as, among other things, "fail[ing] to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties."  Denver Municipal Code § 38-32 defines the crime of resisting police authority as "resist[ing] any police officer, any member of the police department, or any person duly empowered with police authority, while such officer, member or person duly empowered with police authority is discharging or apparently discharging their duties."

---

[8]Although there is a dispute of fact as to whether plaintiff was handcuffed prior to being taken down to the ground, the Court views the facts in the light most favorable to plaintiff and, as a result, adopts plaintiff's version of events for purposes of this analysis.

[9]The parties incorrectly characterize Denver Municipal Code § 38-32 as setting forth the crime of "resisting arrest."  Rather, § 38-32 prohibits resisting the authority of a police officer while the officer is discharging his or her duties, regardless of whether the officer is attempting to effect an arrest.  *Cf.* Colo. Rev. Stat. § 18-8-103.

### a.  Corporal Chavez

Although defendants' probable cause arguments are focused primarily on Officer

Gasca, defendants appear to argue that plaintiff's failure to comply with Corporal

Chavez' commands to show her hands was, under the circumstances, sufficient to

establish probable cause for plaintiff's arrest for the crime of interference.  Docket No.

156 at 11; Docket No. 173 at 8.  The Court agrees.  Dispatch's description of the

stabbing suspect was fluid and provided only basic information.  Corporal Chavez

stated that both women appeared to her to be Native American and both were wearing

blue pants.  Docket No. 156-7 at 1, ¶ 5.  Thus, as discussed above, there is no

evidence suggesting that Corporal Chavez or any of the other responding officers were

immediately able to ascertain which of the two women perpetrated the stabbing or

eliminate the possibility that plaintiff was involved in the stabbing.  Under these

circumstances, while Officer Gasca was securing Ms. Medina, Corporal Chavez

properly approached plaintiff and ordered her multiple times to show her hands.  There

is no evidence that plaintiff physically responded or otherwise complied with Corporal

Chavez' commands.  These facts would lead a reasonably prudent officer in Corporal

Chavez' position to believe that plaintiff had committed the crime of interference by

"fail[ing] to obey a lawful order of a police officer" under circumstances that hindered

Corporal Chavez in securing the scene and/or investigating the stabbing.  *See* Denver

Municipal Code § 38-31.  The Court therefore concludes, as a matter of law, that, at the

time Corporal Chavez handcuffed plaintiff and took her to the ground, probable cause

existed to arrest plaintiff for the crime of interference.  Because this is the earliest point

at which plaintiff's detention could be characterized as an arrest and because plaintiff

does not identify any information Corporal Chavez or the other defendants subsequently learned that would erode probable cause to arrest plaintiff for the crime of interference, *see Buck*, 549 F.3d at 1281 (noting that courts must consider inculpatory and exculpatory evidence in determining probable cause), Corporal Chavez retained probable cause to arrest plaintiff for the crime of interference, regardless of when plaintiff's arrest was actually effectuated.  As a result, the Court need not consider whether subsequent events, most of which are in dispute, provided additional reasons justifying plaintiff's arrest.[10]

Plaintiff argues that she did not "refuse" to show her hands because she did not understand Corporal Chavez' commands.  Docket No. 172 at 21.  However, plaintiff does not establish when plaintiff's inability to understand English became a fact known to Corporal Chavez, *Fogarty*, 523 F.3d at 1156, and, moreover, plaintiff's subjective justifications for failing to follow Corporal Chavez' commands are insufficient to defeat probable cause.  *See Reeves v. Churchich*, 484 F.3d 1244, 1253 (10th Cir. 2007) (holding that plaintiff's subjective reasons for failing to submit to officer's authority, if unknown to the officer, are irrelevant to probable cause analysis).

Plaintiff appears to argue that, because defendants could not have, at any point, reasonably believed that plaintiff was a suspect in Mr. Martinez' stabbing, they lacked probable cause to arrest plaintiff.  Docket No. 172 at 21-22.  However, plaintiff fails to raise a genuine issue of material fact that, at the time she commanded plaintiff to show

---

[10]Because the Court finds that Corporal Chavez had probable cause to arrest plaintiff for the crime of interference, the Court need not consider whether Corporal Chavez had probable cause to arrest plaintiff for the crime of resisting police authority.

her hands, Corporal Chavez had reason to believe that plaintiff was not involved in the stabbing. Corporal Chavez states that she "did not learn that Patricia Medina was the person who actually stabbed the victim (and not Ms. Rodriguez) until after Ms. Rodriguez was in custody." Docket No. 156-7 at 2, ¶ 9. Plaintiff provides no evidence that, prior to placing plaintiff into custody, Corporal Chavez spoke with Mr. Martinez, spoke with any officers who had spoken with Mr. Martinez, or otherwise had sufficient facts to rule out plaintiff's involvement in the stabbing. Rather, Corporal Chavez was proceeding on information she had received over the radio and what she observed upon reaching the scene: two women who looked Native American, both wearing blue pants, and both in close proximity to the victim. Docket No. 156-7 at 1-2, ¶¶ 4, 5, 7. Regardless of whether probable cause existed to arrest plaintiff for stabbing Mr. Martinez, plaintiff's argument is unresponsive to the question of whether the undisputed facts "are sufficient in themselves to warrant a man of reasonable caution in the belief that" the crime of interference had been committed. *See Fogarty*, 523 F.3d at 1156 (quotations omitted).

To the extent plaintiff purports to rely on expert witness Dan Montgomery's report, Mr. Montgomery primarily renders opinions as to whether defendants engaged in an appropriate use of force. Docket No. 172-15 at 24-25. Although Mr. Montgomery states that "[f]rom the officers' reports there was no probable cause to arrest Mrs. Rodriguez in the first place," *id.* at 23, and that "Officer Garcia, just like Officer Chavez and Officer Gasca had no probable cause to arrest or reasonable suspicion to detain Mrs. Rodriguez," *id.* at 26, Mr. Montgomery's report does not explain the basis for such conclusions. Mr. Montgomery's report provides no indication that he utilized the

18

appropriate standard in rendering these opinions or that he considered the specific question of whether defendants had probable cause to arrest plaintiff for the crime of interference.  *See Fogarty*, 523 F.3d at 1156.  Mr. Montgomery's opinions are therefore insufficient to create a genuine dispute of fact on the issue of probable cause.  Because plaintiff's arguments fail to raise a question of fact as to whether Corporal Chavez had probable cause to arrest plaintiff for the crime of interference, Corporal Chavez is entitled to summary judgment as to plaintiff's false arrest claim.

### b.  Officer Gasca

Officer Gasca took Ms. Medina into custody while Corporal Chavez initially made contact with plaintiff.  Docket No. 156-8 at 2, ¶ 6.  Officer Gasca states that he heard Corporal Chavez struggling with plaintiff, moved to the flower bed, and then assisted Corporal Chavez in taking plaintiff into custody.  *Id.*  The parties do not dispute that, by the time Officer Gasca began to assist Corporal Chavez, plaintiff was already on the ground.  Docket No. 172 at 13, ¶ 10.  At some point after plaintiff was placed in custody, Officer Gasca filled out the charging document.  *See* Docket No. 156-10. Plaintiff provides no evidence that Officer Gasca was involved in any other aspects of plaintiff's arrest.

Assuming that plaintiff was under arrest prior to Officer Gasca rendering assistance to Corporal Chavez, plaintiff fails to show that Officer Gasca played any role in effectuating plaintiff's arrest.  *See Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("personal participation in the specific constitutional violation complained of is essential").  Assuming that plaintiff was not under arrest until after Officer Gasca began

rendering assistance, the question becomes whether Officer Gasca violated the Fourth

Amendment in assisting Corporal Chavez in effectuating plaintiff's arrest by (1) helping

Corporal Chavez to restrain plaintiff and (2) completing the charging document.

Although plaintiff's arguments on the issue of probable cause are unresponsive to this

question, the Court will nonetheless consider both aspects in turn.

Under the fellow officer rule, officers participating in a common investigation may

"pool their collective knowledge in establishing probable cause." *Felders ex rel.*

*Smedley v. Malcom*, 755 F.3d 870, 881 (10th Cir. 2014).   "Vertical collective knowledge

exists if one officer *actually has* probable cause and instructs another officer to act

without communicating the information he knows that would justify the action." *Id.*; *see*

*also Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010) ("[w]hen one officer

requests that another officer assist in executing an arrest, the assisting officer is not

required to second-guess the requesting officer's probable cause determination, nor is

he required to independently determine that probable cause exists."); *Dodea v. City of*

*Rifle*, No. 13-cv-01668-LTB-CBS, 2015 WL 350674, at *5 (D. Colo. Jan 27, 2015)

(applying collective knowledge doctrine to warrantless arrest).   However, cases

analyzing the fellow officer rule in the context of probable cause for an arrest have done

so "when there is some degree of communication" between the officer with the requisite

knowledge and the officer making the arrest.   *See United States v. Ashley*, 569 F.2d

975, 983 (5th Cir. 1978).   Here, because there is no evidence of communication

between Corporal Chavez and Officer Gasca prior to and during the struggle to restrain

plaintiff, it is not clear that the collective knowledge doctrine applies to justify Officer

Gasca's actions.

However, officers who step in to assist a fellow officer in restraining a suspect may nonetheless be entitled to qualified immunity on a false arrest claim, even if the officer they assist did not expressly request such assistance.  *See Duran v. Sirgedas*, 240 F. App'x 104, 116 (7th Cir. 2007) (unpublished) (holding that officer who arrived at scene and witnessed other officers arresting individual had probable cause to assist in effectuating arrest because, "[a]lthough the other officers may not have expressly told Officer Peslak that probable cause existed, their conduct implied as much").  In *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002), a plaintiff brought suit against the officer who arrested him and two officers who assisted in the arrest.  The arresting officer was advising plaintiff that he was under arrest, which triggered plaintiff's verbal explosion and caused the assisting officers, who had just arrived on scene, to assist the arresting officer in restraining plaintiff.  *Id.*  The Sixth Circuit held that a reasonable jury could conclude that the arresting officer acted unlawfully by arresting plaintiff in retaliation for exercising his First Amendment rights.  *Id.* at 897.  Despite the arresting officer's improper actions, the assisting officers "could reasonably have concluded that the plaintiff was resisting arrest and that they were entitled to assist a fellow officer in making the arrest."  *Id.* at 898.  The court held that they were entitled to qualified immunity.  *Id.*; *see also Boyle v. Torres*, 756 F. Supp. 2d 983, 992 (N.D. Ill. 2010) ("It is undisputed that [the assisting officers] came to the scene after hearing a call that an officer was in need of assistance.  By the time they arrived, Boyle was engaged in a scuffle with Moore and Torres.  . . . based on the circumstances they observed when

21

they arrived [the assisting officers] were entitled to believe that Moore and Torres had probable cause to arrest Boyle."); *Bettis v. Pearson*, 2007 WL 2426404, at *6 (E.D. Tenn. Aug. 21, 2007) (citing *Greene* and concluding that, although assisting officer did not know what conduct precipitated struggle between plaintiff and arresting officer, assisting officer was entitled to qualified immunity for actions in assisting arresting officer in subduing plaintiff). *But see Wilson v. Dewees*, 977 F. Supp. 2d 449, 457 (E.D. Pa. 2013) (finding that, because plaintiff denied physically resisting arresting officer and because resisting officer made no statements to officer who stepped in to assist, factual dispute precluded summary judgment in favor of assisting officer).  Officer Gasca states that he heard Corporal Chavez struggling with plaintiff and went over to the flower bed to assist Corporal Chavez in restraining plaintiff.  Docket No. 156-8 at 2, ¶¶ 6-7. Although plaintiff denies that she was resisting Corporal Chavez' attempts to restrain her, a reasonable officer in Officer Gasca's position, hearing a struggle taking place between Corporal Chavez and plaintiff and seeing Corporal Chavez take plaintiff to the ground, could believe that Corporal Chavez had a reasonable basis to arrest plaintiff. *See Duran*, 240 F. App'x at 116.  There is no evidence that Officer Gasca was aware that plaintiff could not speak English or knew at that point that plaintiff was not involved in the stabbing.  Moreover, based upon what Officer Gasca observed prior to rendering assistance, a reasonable officer in his position could conclude that plaintiff was resisting arrest, thereby entitling him to assist Corporal Chavez in restraining plaintiff. *See Greene*, 310 F.3d at 898.  Thus, regardless of whether Corporal Chavez communicated her reasons for attempting to take plaintiff into custody and regardless of whether

plaintiff was actually physically resisting Corporal Chavez, Officer Gasca was entitled to come to Corporal Chavez' aid.  Plaintiff does not identify any evidence or authority to the contrary.  Officer Gasca is therefore entitled to qualified immunity as to plaintiff's false arrest claim for his role in helping Corporal Chavez restrain plaintiff.

As for Officer Gasca's role in completing the charging document, defendants argue that Officer Gasca properly completed the charging document based upon information that Corporal Chavez provided him and that Officer Gasca is therefore entitled to qualified immunity.  Docket No. 156-10 at 1 ("Due to the nature of the call (stabbing), for officer safety, officers ordered [plaintiff] to show them her hands but she refused. Officer went to control [plaintiff] but she forcibl[y] pulled away from officer and officer placed [plaintiff] into a flower bed filled [with] dirt.").  Defendants argue that, because Officer Gasca relied on Corporal Chavez' account of these events, he had probable cause to arrest plaintiff for the crimes of interference and resisting authority. Docket No. 156 at 11.  Defendants contend that it was reasonable for Officer Gasca to rely on information provided by Corporal Chavez because the two were partners and because of Corporal Chavez' experience.  *Id.*

"A police officer who acts in reliance on what proves to be the flawed conclusion of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Felders*, 755 F.3d at 882.  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotations omitted).  For the reasons discussed above, plaintiff's failure to respond to Corporal Chavez' commands to show her hands, under the circumstances, provided

23

probable cause to arrest plaintiff for the crime of interference.  Thus, Corporal Chavez relaying this information to Officer Gasca would provide the facts necessary for Officer Gasca to conclude that the crime of interference had been committed.  Plaintiff does not squarely address Officer Gasca's assertion of qualified immunity, nor does she identify evidence suggesting that Officer Gasca's reliance on such information was objectively unreasonable, and, upon review, no such evidence is apparent to the Court. Thus, to the extent Officer Gasca relied on information provided by Corporal Chavez in completing the charging document, he is entitled to qualified immunity.

Because Officer Gasca's actions in effectuating plaintiff's arrest did not constitute a false arrest in violation of the Fourth Amendment, Officer Gasca is entitled to summary judgment on plaintiff's false arrest claim.

### c.  Officer Garcia

Defendants argue that Officer Garcia is not liable for false arrest because she did not personally participate in the decision to arrest plaintiff and did not take any action to arrest or charge plaintiff.  Docket No. 156 at 10.  However, defendants admit that Officer Garcia assisted Corporal Chavez and Officer Gasca in taking plaintiff into custody.  *Id.*  Plaintiff argues that, because a factual dispute exists as to when plaintiff was placed under arrest, Officer Garcia's involvement is a question of fact.  Docket No. 172 at 18-19.

Defendants are correct to a point.  Assuming that plaintiff was considered under arrest prior to Officer Garcia rendering assistance to Corporal Chavez, Officer Garcia did not personally participate in plaintiff's arrest.  *See Henry*, 658 F.3d at 1241. However, assuming that plaintiff was not considered under arrest until after Officer

24

Garcia began assisting Corporal Chavez, the question becomes whether Officer Garcia violated the Fourth Amendment in assisting Corporal Chavez in restraining plaintiff.  For the same reasons Officer Gasca was entitled to assist Corporal Chavez in restraining plaintiff, a reasonable officer in Officer Garcia's situation, upon hearing and/or viewing Corporal Chavez (and Officer Gasca) attempting to restrain plaintiff, would have proper grounds to believe that she was entitled to assist her fellow officers.  *See Duran*, 240 F. App'x at 116; *Greene*, 310 F.3d at 898.  Plaintiff does not identify evidence or authority suggesting that Officer Garcia did not objectively believe that plaintiff's arrest was based upon probable cause.  *See Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1515 (10th Cir. 1995) ("Defendant police officers lose their shield of qualified immunity only if they could not have believed that [plaintiff's] arrest was based on probable cause").  Officer Garcia is therefore entitled to summary judgment on plaintiff's false arrest claim.

## 2.  *Malicious Prosecution*

A plaintiff may bring a Fourth Amendment malicious prosecution claim in one of two ways:

> If arrested without a warrant – and thus triggering the Fourth Amendment require[ment of] a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest – a plaintiff can challenge the probable cause determination made during the constitutionally-required probable cause hearing.  Or, if arrested pursuant to a warrant, plaintiff can challenge the probable cause determination supporting the warrant's issuance.

*Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008).  In either case, "[u]nlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only after

the institution of legal process." *Id.*; *see also Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010) ("Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised."). Although the Tenth Circuit has not precisely defined what constitutes the institution of legal process, precedent suggests that a judicial determination of probable cause – be it through the issuance of a warrant or through a preliminary hearing – is required. *See Wilkins*, 528 F.3d at 798; *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) (suggesting that legal process is instituted when criminal defendant "is bound over by a magistrate or arraigned on charges"). Thus, "[a] groundless charging decision may abuse the criminal process, but it does not, in and of itself, violate the Fourth Amendment absent a significant restriction on liberty." *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007).

Plaintiff fails to establish a Fourth Amendment malicious prosecution claim because she has not provided any evidence that she was detained after the institution of legal process. To the contrary, plaintiff was arrested without a warrant, charged based upon Officer Gasca's complaint, and released. Plaintiff does not suggest, nor is there any evidence, that plaintiff was provided a judicial determination of probable cause – or anything resembling legal process – prior to her release from custody on April 23, 2010. Plaintiff does not indicate, and the Court need not decide, when legal process was instituted because plaintiff does not identify any evidence that she suffered

a seizure after her release from custody on April 23, 2010.[11]  *See Becker*, 494 F.3d at

915 (declining to expand concept of seizure to include "requiring a person to post bond,

compelling a person to appear in court, or imposing restrictions on person's right to

interstate travel").  Because plaintiff has failed to establish that she was detained after

the institution of legal process, defendants are entitled to summary judgment as to

plaintiff's Fourth Amendment malicious prosecution claim.

### B.  Fourteenth Amendment Claims

Defendants argue that, because plaintiff's excessive force, false arrest, and

unlawful seizure claims are based upon conduct that occurred during her arrest, plaintiff

cannot properly bring such claims under the due process clause of the Fourteenth

Amendment.  Docket No. 156 at 9.  Plaintiff appears to dispute defendant's argument,

but does not clearly indicate whether she seeks to assert such claims under both the

Fourth Amendment and the due process clause of the Fourteenth Amendment.  Docket

No. 172 at 16-17.  Although, as noted above, the Fourth Amendment applies to state

actors by way of incorporation into the due process clause of the Fourteenth

Amendment, the Court understands the parties to dispute whether the Fourteenth

Amendment's due process clause provides a basis independent of the Fourth

---

[11]Under Colorado law, persons charged with misdemeanors are not entitled to a preliminary – or probable cause – hearing. *People v. Garcia*, 176 P.3d 872, 874 (Colo. App. 2007) (citing Colo. Rev. Stat. § 16-5-301(1)(a)).  Courts have suggested that, in lieu of a preliminary hearing, legal process is instituted when a defendant charged with a misdemeanor is arraigned.  *See Martinez v. City & Cnty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *11 n.9 (Sep. 25, 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)).  Based upon the docket sheet from plaintiff's criminal case, of which the Court takes judicial notice, it appears that her first appearance before a court was May 21, 2010, when she pled not guilty.  *City & Cnty. of Denver v. Rodriguez*, No. 10GS202162 (Denver Cnty. Ct. May 21, 2010).

Amendment for plaintiff's excessive force, false arrest, and unlawful seizure claims.

Plaintiffs who have been unconstitutionally imprisoned have at least two potential constitutional claims. *Mondragon*, 519 F.3d at 1082. "The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment." *Id.* at 1083. "The period of time between the institution of that process and its favorable termination . . . forms a second claim, arising under the Due Process Clause." *Id.* The legal process that triggers a due process claim is that which is instituted to justify the search, seizure, or imprisonment. *See, e.g.*, *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) ("the Fourteenth Amendment governs any claim of excessive force brought by . . . one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979))); *Wilkins*, 528 F.3d at 799 ("the issuance of an arrest warrant represents a classic example of the institution of legal process"); *Mondragon*, 519 F.3d at 1083 (suggesting that hearing or arrest warrant may constitute legal process sufficient to trigger due process claim).

Here, plaintiff does not provide any evidence that she was provided legal process in the time between her initial contact with defendants up until her release from custody on April 23, 2010. As discussed above, plaintiff was arrested without a warrant and received no judicial determination of probable cause prior to being released from custody. *Cf. Mondragon*, 519 F.3d at 1083. Plaintiff cites *Cortez v. McCauley*, 478 F.3d 1108, 1130 (10th Cir. 2007), in support of her argument that she was being

28

detained for investigation, but does not explain why this fact renders her claims cognizable under the due process clause of the Fourteenth Amendment.  The Court concludes that it does not.  *Cf. Estate of Booker*, 745 F.3d at 419 ("the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained *without a warrant* and *prior to* any probable cause hearing" (quotations omitted, emphasis in original)); *Mondragon*, 519 F.3d at 1083.  Thus, to whatever extent plaintiff asserts Fourteenth Amendment due process claims for excessive force, false arrest, and unlawful seizure, plaintiff has failed to provide sufficient evidence to create a genuine issue for trial with respect to such claims. Defendants' motion for summary judgment on this issue will be granted.

Defendants argue that plaintiff's Fourteenth Amendment claim for malicious prosecution fails because plaintiff has an adequate state law remedy.  Docket No. 156 at 9.  The Court understands plaintiff to argue that state law does not affect whether she can maintain a Fourteenth Amendment claim for malicious prosecution.  Docket No. 172 at 17.  Plaintiff's argument fails to address controlling Tenth Circuit precedent. "If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy – such as a state tort claim – will satisfy due process requirements."  *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).  The Tenth Circuit has held that, where a law enforcement officer is alleged to have falsified the facts in support of an arrest warrant and subsequent prosecution, "[s]uch lawlessness could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote.  Colorado law provides that remedy."  *Id.* (citing *Hewitt v. Rice*, 154 P.3d 408,

29

411 (Colo. 2007) (setting forth elements of malicious prosecution claim under Colorado law)); *see also Becker*, 494 F.3d at 921; *Urban v. Tularosa*, 1998 WL 694465, at *6 (10th Cir. Oct. 6, 1998) (unpublished) ("an adequate post-deprivation remedy is a defense to a § 1983 due process claim only where the deprivation is unpredictable, or random and unauthorized").  The Court finds *Myers* indistinguishable from the present case.  Here, plaintiff asserts that defendants falsified statements that formed the basis of plaintiff's prosecution, acts which, if true, are unlawful and could not be anticipated pre-deprivation.  Plaintiff does not argue otherwise or provide any evidence that, in preparing the affidavits that led to her prosecution, defendants were acting pursuant to department policies.  *Cf. Chavez-Torres v. City of Greeley*, No. 14-cv-01187-RBJ, 2015 WL 1850648, at *5 (D. Colo. April 21, 2015) ("plaintiff alleges not that Officer Gooch's conduct was random and unauthorized, but rather that she acted pursuant to department policies" (citing *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986)). Thus, because plaintiff has an adequate state law remedy for defendants' unanticipated conduct, due process has been satisfied and her Fourteenth Amendment claim for malicious prosecution will be dismissed.  *See Myers*, 738 F.3d at 1194.

### C.  Conspiracy

Defendants argue that they are entitled to summary judgment as to plaintiff's § 1983 and § 1985 conspiracy claims.  Docket No. 156 at 16-17.  Specifically, defendants argue that plaintiff has failed to provide evidence upon which a reasonable juror could conclude that defendants reached an agreement to deprive plaintiff of her constitutional rights.  *Id.*

A conspiracy claim brought under either § 1983 or § 1985 "requires at least [(1)] a combination of two or more persons acting in concert and [(2)] an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).  As to plaintiff's conspiracy claims, the Final Pretrial Order states that, "[a]fter Defendants Chavez, Gasca and Garcia beat Plaintiff they conspired amongst themselves and with Defendant Bowser to cover up their unconstitutional actions and conspired and agreed to have Plaintiff charged and prosecuted for the crimes of Interference and Resisting Arrest." Docket No. 178 at 4.  Thus, plaintiff appears to assert that defendants entered into a conspiracy with the objective of (A) covering up their alleged assault of plaintiff and (B) charging and prosecuting plaintiff for interference and resisting authority.

As to Corporal Chavez and Officers Gasca and Garcia, plaintiff argues that, because Officers Gasca and Garcia joined in Corporal Chavez' alleged assault on plaintiff, Corporal Chavez and Officers Gasca and Garcia were acting in concert. Docket No. 172 at 28.  Although a reasonable juror could find that Corporal Chavez and Officers Gasca and Garcia acted in concert during their alleged assault on plaintiff, the mere fact that those defendants acted in concert is, by itself, insufficient to establish the existence of a conspiracy.  Plaintiff correctly points out that she need not show "[a]n express agreement among all the conspirators." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quotations omitted).  Nonetheless, plaintiff does not cite any evidence, as it is her burden to do, establishing that those defendants had a meeting of the minds or a shared objective to cover up the alleged assault or charge plaintiff with interference and resisting authority. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.

31

1998).  The discussions that took place between Corporal Chavez and Officer Gasca

prior to making contact with plaintiff do not evidence a conspiracy, *see* Docket No. 156-

2 at 8, p. 130:19-24, and plaintiff does not identify evidence suggesting that defendants

discussed covering up the alleged assault after the fact.  Although Officer Gasca

included information from Corporal Chavez in the complaint, Docket No. 156 at 5, ¶ 15,

this fact does not, by itself, establish that Corporal Chavez and Officer Gasca were

proceeding under a shared conspiratorial objective.  Moreover, plaintiff does not cite

any evidence indicating what, if any, involvement Officer Garcia had in charging

plaintiff.

Plaintiff argues that Officer Bowser acted in furtherance of the conspiracy by

"writing a false witness statement and testifying in court."  Docket No. 172 at 28.

However, plaintiff provides no evidence that a meeting of the minds occurred between

Officer Bowser and any other individual.  Officer Bowser did not discuss his involvement

in the events of April 22, 2010 with any of the other defendants and, moreover, did not

discuss the subject of his trial testimony with the other defendants or the prosecutor

prior to taking the stand.  Thus, plaintiff has not provided sufficient evidence upon which

a reasonable juror could conclude that Officer Bowser was a participant in a conspiracy

to cover up the alleged assault on plaintiff and/or to charge and prosecute plaintiff with

interference and resisting authority.[12]

---

[12]The Court need not reach the question of whether plaintiff has established injury in the form of deprivation of a constitutional right.  *See Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990) (holding that plaintiff bringing § 1983 conspiracy claim "must prove not only a conspiracy, but also an actual deprivation of rights"); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (setting forth elements of § 1985(3) claim).

Plaintiff's § 1985 conspiracy claim is deficient for an additional reason.  In order to establish a § 1985(3) conspiracy, plaintiff must show that the conspiracy was "'driven by some racial or otherwise class-based discriminatory animus.'"  *Brooks*, 614 F.3d at 1227 (quoting *Dixon*, 898 F.2d at 1447); *see also Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (noting that "class-based animus" language has been narrowly construed "and does not, for example, reach conspiracies motivated by an economic or commercial bias").  Plaintiff's only argument that the alleged conspiracy was motivated by racial animus is Corporal Chavez' statement, "We're in America shut-up."  Docket No. 172-2 at 3, ¶ 17.  This statement is, by itself, insufficient to establish that defendants conspired against plaintiff because she is Hispanic or that the alleged conspiracy was otherwise "motivated by racially-discriminatory animus."  *See Paris v. Sw. Bell Tele. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004) (unpublished).

For the foregoing reasons, defendants are entitled to summary judgment as to plaintiff's § 1983 and § 1985 conspiracy claims.

## IV.  CONCLUSION

Wherefore, it is

**ORDERED** that defendants' Motion for Partial Summary Judgment [Docket No. 156] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims against Officer Bowser are **DISMISSED**.  It is further

**ORDERED** that plaintiff's Fourth Amendment claims for false arrest and malicious prosecution against Corporal Chavez, Officer Gasca, and Officer Garcia are

33

**DISMISSED**.  If is further

ORDERED that plaintiff's Fourteenth Amendment claims are **DISMISSED**.


DATED September 3, 2015.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge